IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| COURTNEY ANNE KELTON,<br><br>               Petitioner,<br><br>     vs.<br><br>JEFFREY S. SHAW, DIRECTOR OF<br>MONTANA DEPARTMENT OF<br>CORRECTIONS; MICHELLE HALL,<br>COMPACT ADMINISTRATOR OF<br>MONTANA INTERSTATE<br>COMPACT OFFICE; INTERSTATE<br>COMMISSION FOR ADULT<br>OFFENDER SUPERVISION, DOES<br>1-20,<br><br>               Respondents. | Cause No. CV 25-119-BU-BMM<br><br><br>ORDER |

Petitioner Courtney Anne Kelton ("Kelton"), an Idaho state probationer presently under supervision in Montana, seeks habeas corpus relief. (Doc. 1.) Kelton also has new Montana state charges pending.

Kelton has not indicated whether she seeks relief under 28 U.S.C. §2254, or 28 U.S.C. §2241, but instead references the general constitutional grant of habeas corpus. (*Id.* at 3.) Kelton alleges additional restraints were placed upon her supervision without a preliminary hearing or revocation hearing, resulting in a defective process in violation of the Interstate Compact for Adult Offender

1

Supervision ("ICAOS"), as well as various constitutional rights.  (*Id*. at 2.)

Kelton seeks emergency injunctive relief to prevent future retaliatory escalation of sanctions while this habeas matter remains pending.  (*Id*.)  Kelton further alleges that the ICAOS constitutes federal law and that exhaustion principles do not apply to her case.  (*Id*. at 4.)  Similarly, Kelton believes that the Court should not abstain from determining that she is unjustly restrained and release her from this "unlawful custody."  (*Id*. at 4-6.)

I.    **Background**

Kelton was sentenced for two drug offenses in Idaho.[1]  On August 26, 2025, Kelton signed conditions of probation and parole and other associated documents with the Montana Department of Corrections Adult Probation and Parole.  (Doc. 1-1 at 10–17.)  Kelton's supervision was transferred from Idaho to Montana pursuant to the ICAOS.

On November 10, 2025, Kelton was cited for misdemeanor criminal drug paraphernalia possession and felony possession of dangerous drugs.  (*Id*. at 39–40, 42-43.)  Kelton posted bond and was released from custody pursuant to conditions.  (*Id*. at 52–54, 58–59.)  The State of Montana subsequently moved to amend the charges in the criminal matter to remove the felony count and requested that an

---

[1] *See* Montana Con Web: https://offendersearch.mt.gov/conweb/Offender/3039838/ (accessed Dec. 16, 2025).

initial appearance be scheduled in the Gallatin County Justice Court. (*Id*. at 86–87.) The motion was granted and the preliminary hearing that had previously been set was vacated. (*Id*. at 116.) An amended complaint and affidavit of probable cause were filed in the justice court on November 26, 2025. (*Id*. at 89–93.) Kelton was summoned to appear on the amended complaint on December 17, 2025. (*Id*. at 113.)

Kelton has filed a pro se motion to dismiss, (*id*. at 99–109), as well as a judicial notice of objection and corresponding motions in the Montana justice court. (*Id*. at 118–131.) Kelton generally alleges the following claims in her pro se filings that the state lacks jurisdiction, she did not waive any rights, that service was improper, that she was denied meaningful notice, that there is a lack of personal jurisdiction, that probation lacked authority to enter and search her residence, that suppression of evidence is warranted under the "fruit of the poisonous tree" doctrine, and that the prosecutor committed misconduct. Kelton's state proceedings remain on going.

## II. **Kelton's Claims**

In her federal filing, Kelton first alleges that she has been subjected to severe restrains on her liberty. In support of this claim she references her intensive supervision weekly schedule, (doc. 1-1 at 136–140), a release of health information she was required to sign, (*id*. at 142–143), and a copy of the Montana Department

of Corrections Offender Handbook for the Intensive Supervision Program ("ISP"). (*Id*. at 23–31.)  Kelton believes her present supervision requirements constitute punishment prior to conviction.  Kelton also suggests her self-employment has been terminated and she has been compelled to obtain employment against her will in violation of her constitutional rights.  (Doc. 1 at 8–9.)  Kelton also alleges that the state justice court unlawfully cancelled her preliminary hearing that was originally scheduled for December 5, 2025.  (*Id*. at 9.)  Kelton believes the State of Montana lacks personal jurisdiction over her due to the defective service that occurred in her pending criminal matter.  (*Id*. at 10.)  Kelton also contends that the State of Montana failed to follow "binding federal ICAOS rules" in violation of *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), invalidating her "custody."  Finally, Kelton alleges structural unfairness and due process violation have occurred in her underlying state criminal case, including undocketed filings, "phantom" judicial appearances, altered timestamps, and coerced appointment of counsel.  (*Id*. at 11.)

On this basis, Kelton requests that a writ of habeas corpus be granted, that this Court declare her custody unlawful and void, and that she be immediately released from all unlawful restraints.  (*Id*. at 12.)  Kelton asks that the State of Montana be enjoined from any further retaliatory or escalatory sanctions.

III.    **Analysis**

4

Several issues with Kelton's petition preclude relief in this Court.  Rule 4 of the Rules Governing Habeas Corpus Cases under Section 2254 provides for summary dismissal of a habeas petition "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  The Court dismisses the petition.

       i.    **Exhaustion**

Kelton's petition conflates issues related to her supervision under the IAOCS resulting from her Idaho state convictions with new charges pending against her in the Gallatin County Justice Court.  Nothing in Kelton's filings indicate that any of the claims have been presented to the Montana Supreme Court. Kelton believes she should not be required to exhaust her claims.

As a matter of comity, a federal court will not entertain a habeas corpus petition unless the petitioner has exhausted the available state judicial remedies on every ground presented in the petition.  *See e.g.*, 28 U.S.C. §§2254(b), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) ("Comity thus dictates that when a prisoner alleges that [her] continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."); *see also, Rose v. Lundy*, 455 U.S. 509, 518-22 (1982).

State remedies have not been exhausted unless and until the petitioner's

federal claims have been fairly presented to and disposed of on the merits by the highest court of the state. *See, Baldwin v. Reese*, 541 U.S. 27, 29 (2004). A claim has not been fairly presented unless the petitioner has described in the state court proceedings both the operative facts and the federal legal theory on which her claim is based. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Exhaustion is required to the extent that Kelton seeks to challenge any claims relevant to her judgment of conviction out of Idaho and/or the claims related to her present supervision under the IAOCS.

As a pretrial detainee, Kelton's claims are considered under a separate provision. Section 2241 "provides generally for the granting of writs of habeas corpus by federal courts, implementing 'the general grant of habeas authority provided by the Constitution.'" *Frantz v. Hazey*, 533 F. 3d 724, 735 (9th Cir. 2008 (en banc) (*quoting White v. Lambert*, 370 F. 3d 1002, 1006 (9th Cir.), *cert. denied*, 543 U.S. 991 (2004)). Section 2241 provides the authority for granting habeas relief to a person "who is not in custody pursuant to a state court judgment" but, rather, who is in custody for some other reason, such a pretrial detention or awaiting extradition. *White*, 370 F. 3d at 1006. "That section does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Id*.; *see also Liang v. Ashcroft*, 370 F. 3d 994, 1000–1001 (9th Cir. 1994).

The principles of federalism and comity require, however, that the Court

abstain and not entertain a pretrial habeas challenge unless the petitioner shows

that: (1) the petitioner has exhausted available state judicial remedies, and (2)

"special circumstances" warrant federal intervention. *Carden v. Montana*, 626 F.

2d 82, 83–4 n.1 (9th Cir.), *cert. denied,* 449 U.S. 1014 (1980). Kelton has motions

pending in the Montana justice court. No Montana state court has yet ruled on

them. Kelton has failed to present any cognizable federal claim as a pretrial

detainee. Kelton has not demonstrated that her case presents an adequately

unusual circumstance to excuse the exhaustion requirement.

ii.    **Abstention**

Similarly, to the extent that Kelton asks this Court to consider challenges to

her ongoing criminal proceedings, the principles of comity and federalism weigh

against federal courts interfering with ongoing state criminal proceedings.

*Younger v. Harris*, 401 U.S. 37 (1971). Federal courts cannot interfere with

pending state criminal proceedings, absent extraordinary circumstances which

create a threat of irreparable injury. *Younger*, 401 U.S. at 45–46. Irreparable injury

does not exist in such situations if the threat to a petitioner's federally protected

rights may be eliminated by her defense of the criminal case. Moreover, "even

irreparable injury is insufficient [to permit interference with the proceeding] unless

it is 'both great and immediate.'" *Id*. at 46 (quoting *Fenner v. Boykin*, 271 U.S.

240, 243 (1926)). "The *Younger* doctrine was borne of the concern that federal

court injunctions might unduly hamper a state in its prosecution of criminal laws."

*Miofsky v. Superior Court*, 703 F.2d 332, 336 (9th Cir. 1983).

　　*Younger* abstention is appropriate when the following factors are satisfied:

"(1) there is an ongoing state judicial proceeding; (2) the proceeding implicate[s]

important state interests; (3) there is an adequate opportunity in the state

proceedings to raise constitutional challenges; and (4) the requested relief seek[s]

to enjoin or has the practical effect of enjoining the ongoing state judicial

proceeding." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (citation and

internal quotations omitted). A petitioner may avoid application of the *Younger*

abstention doctrine by demonstrating that there is bad faith, harassment, or some

other extraordinary circumstance where irreparable injury can be shown. *See Perez*

*v. Ledesma*, 401 U.S. 82, 85 (1971). In practical terms, the *Younger* doctrine means

that "'only in the most unusual circumstances is a defendant entitled to have

federal interposition by way of injunction or habeas corpus until after the jury

comes in, judgment has been appealed from and the case concluded in the state

courts.'" *Carden*, 626 F.2d at 83–84 (*quoting Drury v. Cox,* 457 F.2d 764, 764–65

(9th Cir. 1972)).

　　The Court finds all *Younger* requirements are satisfied in the present matter

and declines to intervene.  Kelton is presently out on bond on charges filed in the

Gallatin County Justice Court.  Kelton has a court date scheduled for December 17,

8

2025.  Kelton's own filings demonstrate that she has not yet proceeded to trial in the Montana justice court.  The matter remains ongoing.

Second, Kelton's criminal proceedings implicate Montana's important interest in the order and integrity of its criminal proceedings.  *See Kelly v. Robinson*, 479 U.S. 36, 49 (1986) ("the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief").  Third, Kelton has not demonstrated an inability to raise her constitutional challenges in her state proceedings.  Kelton has raised several constitutional claims and if she is unsuccessful in the Montana justice court she may pursue them on direct appeal.  *See Pennzoil Co. v. Texaco, Inc*., 481 U.S. 1, 15 (1987) ("[A] federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.").

Finally, granting relief in the instant matter would have the practical effect of enjoining Kelton's ongoing state proceedings.  Kelton has not shown irreparable injury will occur without this Court's intervention or demonstrated any other extraordinary circumstance.  The Court will abstain without a compelling reason to intervene.  *Younger* provides a basis for dismissal.

### iii.   **Non-Cognizable Claims**

Finally, Kelton's claims appear to not challenge her present supervision

under the ICAOS. Kelton seems to challenge the conditions of her present confinement, rather than the fact or duration of her confinement. *See e.g., Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (explaining that an action under 42 U.S.C. §1983, rather than habeas corpus, is proper if success on the merits would not "necessarily have meant immediate release or a shorter period of incarceration").

Even assuming Kelton's ICAOS claims were properly brought in a federal habeas action, such claims are not cognizable on federal habeas review. Federal habeas corpus relief is available only for violations of the Constitution or laws or treaties of the United States. 28 U.S.C. §2254(a); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Federal habeas relief remains unavailable for violations of state law or alleged error in the interpretation or application of state law. *See, Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

Kelton argues that the ICAOS is federal law. Congress has consented to states entering compacts like the ICAOS, *see* 4 U.S.C. §112(a), the ICAOS "does not manifest either expressly or indirectly to create a federal right or remedy." *See Doe v. Pennsylvania Board of Probation and Parole*, 513 F. 3d 95, 104–05 (3d Cir. 2008) (finding no private right of action to enforce ICAOS provisions). Rather, "the language of the [ICAOS] itself creates rights for the various states who are signatories to it." *Id*. ICAOS also fails to "create rights for probationers or

parolees" as "Congress approved [ICAOS] as a means of aiding the states in crime prevention, not as a vehicle to provide procedural rights for probationers and parolees." *Id.*; *see also M.F. v. State of New York Executive Dpt. Div. of Parole*, 640 F. 3d 491, 495–96, n. 7 (2d Cir. 2011) (noting that although ICAOS is authorized by federal statue, the ICAOS's "text and structure" make clear that it is solely an agreement between states, and not a source of private rights of action for offenders whose movement it governs and any challenge to the conditions of supervision imposed on an offender raises issues "traditionally relegated to state law") (*citing* ICAOS Rules; 4 U.S.C. §112(a)). Accordingly, these claims will be dismissed.

IV.    **Temporary Restraining Order**

Kelton has filed an emergency motion for a temporary restraining order ("TRO") and seeks injunctive relief. (Doc. 2.) Kelton asserts that the TRO is necessary to preserve the status quo and prevent irreparable harm while this habeas matter remains pending. (*Id.* at 2.) Specifically, Kelton asserts she has been subjected to "ongoing and escalating" restraints on her liberty pursuant to her supervision under the ICAOS, including the following: electronic monitoring, restrictions upon her movement, drug testing, employment coercion, and financial "exactions." (*Id.*) Kelton states these restraints were imposed without a hearing, resulting in a "structurally defective" criminal process. (*Id.*)

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 24 (2008) (citations omitted). It serves not as a preliminary adjudication on the merits, but as a tool to preserve the status quo and prevent irreparable loss of rights before judgment. *Textile Unlimited, Inc.* v. *A. BMH & Co., Inc.,* 240 F.3d 781, 786 (9th Cir. 2001). In reviewing a motion for preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citations and internal quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted).

*Winter* does not expressly prohibit use of a "sliding scale approach to preliminary injunctions" whereby "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance/or the Wild Rockies* v. *Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011). The Ninth Circuit recognizes one such "approach under which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships

tips sharply in plaintiff's favor." *Id.* (citations and internal quotation marks omitted).

Applying the *Winter* factors, Kelton's request for a preliminary injunction will be denied. Kelton relies upon *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260 (1954), for the premise that failure to follow binding rules affecting liberty invalidates the resulting restraint. Further, Kelton contends that because there was no hearing prior to additional restraints being imposed, her heightened supervision was enacted unjustly. (Doc. 2 at 5.) As a preliminary matter, the fact that Kelton was charged with new criminal drug offenses, while already on supervision under the ICOAS for drug offenses, likely led to increased conditions of her supervision.[2] Additionally, the cases upon which Kelton relies do not stand for the premises advanced. That is, they do not demonstrate a protected liberty interest or a federal cause of action under the ICAOS. Thus, Kelton cannot demonstrate that she is likely to succeed on the merits of her habeas case as the matter is being dismissed.

Next, Kelton has not established that she will suffer irreparable harm absent this Court's intervention. Kelton assented to supervision under the ICAOS. The Court understands that Kelton disagrees with the conditions she is presently

---

[2] *See e.g.*, (Doc. 1-1 at 136-140)(ISP weekly schedule appears to have been imposed on the day following Kelton being charged with new criminal offenses).

subjected to, including electronic surveillance, house arrest, search provisions, and employment requirements. (Doc. 2 at 5–6.) But imposition of supervision conditions against her personal preference and any inconvenience that may result do not rise to the level of irreparable harm. Kelton suggests that the present conditions are subject to "unilateral escalation," (Doc. 2-1 at 2), but the conditions could also be lifted or left in place. The situation lacks certainty as to what may happen.

"Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F. 2d 668, 674 (9th Cir. 1988). A presently existing actual threat must be shown, although the injury need not be certain to occur. *See Zenith Radio Corp. v. Hazeltine Research, Inc*., 395 U.S. 100, 130–31 (1969). Kelton's suggestion that her present level of supervision inconveniences her fails to support injunctive relief. Kelton has not shown that she is likely to suffer irreparable harm without injunctive relief from this Court. Moreover, there is no indication that Kelton has attempted to pursue available administrative remedies through the ICAOS or that she has sought relief in the state courts.

Additionally, the balance of hardships fail to tip in Kelton's favor. In making this determination, a court must consider the impact that granting or denying a motion for preliminary injunction will have on respective groups. *See*

*International Jensen v. Metrosound U.S.A.*, 4 F. 3d 819, 827 (9th Cir. 1993).

Kelton suggests granting relief will impose no hardship on the state of Montana

and that refusal to do so will undermine the great writ of habeas corpus. (Doc. 2 at

6.) The Court disagrees.

Kelton's request for injunctive relief seeks federal court interference with

the operation of local state entities, both as it relates to her supervision and to her

active criminal case. Such interference is highly disfavored. *See Younger*, 401

U.S. 37 (1971) (federal courts should abstain from interference in state criminal

proceedings); *see also Huffman v. Pursue*, 420 U.S. 592, 607 (1975) (*Younger*

principles apply to request for injunction affecting state civil proceeding); *see also*

*Rizzo v. Goode*, 423 U.S. 362 (1976) (comity concerns weigh against injunctive

relief against local law enforcement agency). The general policy against

interference in ongoing proceedings of state courts and executive agencies weighs

against granting Kelton's motion for injunctive relief. The balance of equities and

hardships does not favor the grant of an injunction.

Finally, a preliminary injunction is not in the public interest for the same

reasons. Kelton asserts that the public interest will be served by ensuring that

interstate cooperation does not override constitutional guarantees and that federal

law enacted by Congress is followed. (Doc. 2 at 6.) The ICAOS does not carry

constitutional weight or qualify as clearly established federal law. Further, the

interests of the public in federal-state comity are best served by this Court's exercise of restraint.  No identifiable public interest would be served by injunctive relief.

Kelton has not established entitlement to injunctive relief.  Concerns about her present level of supervision should be dealt with administratively or in the state courts.  The Court denies the motion for temporary restraining order.

Kelton is further cautioned that she generally has only one opportunity to file a federal habeas petition challenging a state judgment of conviction. Any continued pro se filings relative to unexhausted claims or non-cognizable claims may have a preclusive effect on her ability to seek and obtain future federal habeas relief.

## V.    Ex Parte Filing/Sealed Documents

Kelton filed a "Certificate of Ex Parte Necessity" (Doc. 2-2), along with her other filings.  Out of an abundance of caution, the Clerk of Court's Office sealed Kelton's filings.  In support of her notice, Kelton asserts that this matter should be considered "ex parte" because the filing creates a risk of "immediate retaliation, escalation of custodial restrains, or alteration of Petitioner's custodial status before this Court may act."  (*Id*. at 2.)

The Court recognizes that in the Ninth Circuit, "we start with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto.*

*Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003); *see also Kamakana v. City & Cnty. of Honolulu*, 447 F. 3d 1172, 1178 (9th Cir. 2006).  The public has a "general right to inspect and copy public records and documents, including juridical records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, n.7 (1978). Exceptions to this general principle exist.

A party seeking to seal a judicial record bears the burden of overcoming this strong presumption by providing "compelling reasons" to do so. *Foltz,* 331 F.3d at 1135. "Compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when the "court files might have become a vehicle for improper purposes," such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. *Nixon,* 435 U.S. at 598.

In articulating compelling reasons, a party seeking to seal judicial records must support the reasoning with "specific factual findings, that outweigh the general history of access and the public policies facing disclosure." *Kamakana*, 447 F. 3d at 1179.  "After taking all relevant factors into consideration, the district court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995).

Because the petition presently warrants dismissal, the premise that Kelton

17

will be subjected to retaliation while this matter is pending is not persuasive and does not overcome the strong presumption favoring access. The Court does acknowledge that Kelton's exhibit attached to her petition, (Doc. 1-1), contains personal and/or identifying information. That item will remain sealed; however, the Clerk will be directed to unseal the remainder of Kelton's filings.

## VI.    Certificate of Appealability

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Kelton has not yet made a substantial showing of a violation of a federal constitutional right. Moreover, the principles of exhaustion and abstention preclude this Court's intervention. Jurists would find no reason to encourage additional proceedings at this time. A certificate of appealability is denied.

Based on the foregoing, the Court enters the following:

18

## ORDER

1.  Kelton's Petition (Doc. 1) is **DISMISSED**.

2.  Kelton's Motion for Temporary Restraining Order and Injunctive Relief (Doc. 2) is **DENIED**.

3.  The Clerk of Court is directed to UNSEAL all of Kelton's filings, except for Exhibits A-AA (Doc. 1-1.)

4.  The Clerk of Court is directed to enter a judgment of dismissal.

5.  A certificate of appealability is **DENIED**.

DATED this 19th day of December, 2025.

Brian Morris, Chief District Judge
United States District Court